IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Steven Mendoza, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 20 C 670 |
| | ) | |
| Thomas Dart, Sheriff of | ) | |
| Cook County, and Cook | ) | |
| County, Illinois. | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Steven Mendoza has used a wheelchair to move about since a gunshot wound left him unable to use his legs. In this action, he asserts that defendants discriminated against him in violation of Title II of under the Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the "Rehab Act") while he was a pre-trial detainee at Cook County Jail.[1] Specifically, Mendoza

---

[1] Because the obligations these statutes and their implementing regulations impose on defendants are "materially identical," *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018), my use in this opinion of the acronym "ADA" in phrases such as "compliance with the ADA," or "violation of the ADA," should be understood to encompass both statutes.

claims that during scheduled court appearances—once at the "Branch 38" courthouse and once at the Leighton Courthouse—he was unable to "move to court on a basis equal to nondisabled inmates" due to physical barriers at these locations. He also claims that these courthouses did not provide him with adequate access to toilet and sink facilities.

Plaintiff alleges that as a result of defendants' failure to comply with the ADA, he fell from his wheelchair while exiting Branch 38 when the officer assisting him pushed his wheelchair off a concrete pathway and over grass to avoid an accumulation of water in the pathway. In addition, plaintiff claims that he lacked access to an accessible toilet at both locations, and that inadequate toilet at the Leighton Courthouse caused him to urinate on himself during a lengthy wait in the holding area or "bullpen." Also at the Leighton Courthouse, plaintiff was required to pass through a non-ADA-compliant gate to gain access to the courtroom. This process required plaintiff to lift himself up out of his wheelchair using his arms while an officer partially collapsed the wheelchair beneath him to fit through the narrow passageway. Plaintiff claims that this process caused him pain and discomfort.

Plaintiff seeks damages to compensate him for injuries caused by the foregoing ADA violations, as well as prospective equitable relief to correct the violations. In separate motions, defendants

move for summary judgment on plaintiff's claims. For the reasons that follow, the motions are denied.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Structural barriers that impede access by persons with disabilities to public services are "[p]erhaps the most obvious example of such discrimination." *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 853. (7th Cir. 2018). The statute requires newly constructed or altered facilities to comply with structural accessibility standards. *Id*. "When public entities offer services at inaccessible facilities built before 1992...they can comply with Title II by making reasonable modifications to their policies, practices, or procedures. *Id*. at 853-54.

To withstand summary judgment, Mendoza must point to evidence that, if credited, is sufficient to enable a jury to conclude that he is a "'qualified individual with a disability'" who was "'denied the benefits of the services, programs, or activities'" from the prison "'by reason of such disability.'" *Shaw v. Kemper*, No. 21-3265, 2022 WL 14229390, at *2 (7th Cir. Oct. 25, 2022) (quoting 42 U.S.C. § 12132). "Refusing to make reasonable accommodations is

3

tantamount to denying access." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir.2012). To recover damages, plaintiff must ultimately show that defendants' ADA violations were the result of their deliberate indifference. *Lacy* 897 F.3d at 863.

In defendants' view, the fact that plaintiff successfully attended his court hearings at both courthouses means that he cannot show that he was denied the benefits of any court "services, programs, or activities." For this argument, defendants rely on *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015), in which the court upheld summary judgment of the plaintiff's ADA claims based on the defendant's failure to provide him with a "wheelchair-ready van," concluding that he had not alleged a denial of access to any services or programs as a result of the van's shortcomings but only that he was "inconvenienced with longer waits and humiliation." *Id.* at 592-93. As another court in this district recently observed, "[t]he line between a mere inconvenience and a more serious denial of access is not a bright one." *Edwards v. Dart*, No. 21 C 5665, 2022 WL 3543474, at *6 (N.D. Ill. Aug. 17, 2022) (citing *Wagoner* and *Shuhaiber v. Illinois Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020), as examples of the "'inconvenience side,'" and *Jaros* and *Boston v. Dart*, No. 14 C 8680, 2015 WL 4638044, at *3 (N.D. Ill. Aug. 4, 2015), as examples in which the plaintiffs could prove a more serious denial of access

4

based on evidence that the defendants' "failure to accommodate prevented access on the same basis as others").

Here, while it is true that plaintiff did not miss any of his scheduled court appearances, he offers evidence that the sallyport entrance Cook County detainees ordinarily use to enter and leave the Branch 38 courthouse was too narrow for his wheelchair, and that the alternative route he traveled was not a reasonable accommodation since there was a "significant drop between the vehicular way and the sidewalk," causing water to accumulate in the pathway. Kulcik Dep., ECF 133-5 at 83. *See also* Kulcik Rep., ECF 141-6. A jury could conclude that this drop, which in the opinion of plaintiff's expert makes the pathway non-ADA-compliant, and which plaintiff testified caused him to fall from his wheelchair and injure himself, created more than a mere "inconvenience" and prevented him from accessing the courthouse on the same basis as non-disabled detainees. As for the primary obstacle plaintiff identifies at the Leighton Courthouse—the narrow gate that he could cross only by lifting himself out of his wheelchair—a jury crediting his testimony could likewise conclude that the pain and discomfort he experienced was more than an inconvenience.[2]

---

[2] The parties dispute whether plaintiff was offered an alternative route that did not require him to pass through this gate. *See*

With respect to plaintiff's access to toilets, the Seventh Circuit recently reiterated that "a handicapped-accessible toilet for disabled prisoners amounts to a service, the denial of which could establish a claim under either statute." *Shaw v. Kemper*, No. 21-3265, 2022 WL 14229390, at *2 (7th Cir. Oct. 25, 2022). Defendants concede that the toilet in the holding area of Branch 38 lacked the grab bars required for ADA compliance, but they argue that a reasonable jury must conclude that the catheter plaintiff was provided was a reasonable accommodation because there is "no evidence" that he could not approach the toilet for that purpose. But the evidence is not so cut and dried. It is true that plaintiff did not testify affirmatively that he could not approach the toilet in the holding area of Branch 38. But what he did say is that during his six-hour wait in that area, he asked to use an accessible toilet and was told that "they didn't have a handicap accessible," so he had to "wait it out" and ultimately urinated on himself. Mendoza Dep., Mendoza Dep. ECF 133-2, at 32:244-33:11. A reasonable jury could conclude based on this evidence that despite being equipped with a catheter, Mendoza was unable to use it to void his bladder into the toilet and otherwise lacked reasonable access to a toilet while at Branch 38.

---

Def.'s L.R. 56.1(b)(3)(C) Stmt., ECF 148 at ¶ 12. At this stage, however, I must accept plaintiff's version of the facts.

6

Whether plaintiff had access to an ADA-compliant toilet at the Leighton Courthouse is a closer question. As defendants observe, plaintiff's expert concluded that the bullpen he inspected was ADA-complaint. Plaintiff now suggests that he might have been held in a different bullpen than the one his expert inspected and offers a video depicting an unidentified detainee in a wheelchair apparently awaiting a court call in an area other than the bullpen on which plaintiff's expert opined. Although defendants' objection to this video is well-taken,[3] plaintiff testified that in the bullpen where he was held, "[t]he toilet is in between a wall, and my wheelchair can't fit in there at all," and that it lacked grab bars. Mendoza Dep, ECF 133-2 at 57:18-60:2; Mendoza Decl., ECF 140-1 at ¶ 12. Whatever conflict there may be between this testimony and his expert's opinion about the bullpen he examined is one that defendants are free to explore at trial, but it is not one that can be resolved on the record before me, even if I ignore the video to which defendants object.

This leaves only the question of whether a jury could conclude that defendants acted with deliberate indifference, i.e., that they had knowledge that "a harm to a federally protected right

---

[3] Setting aside that the video was not produced in discovery in this litigation, there is no evidence to suggest that the area depicted in the video is the bullpen in which plaintiff was held, and indeed, plaintiff's description of the toilet area in his bullpen is at odds with what appears in the video.

[was] substantially likely" and failed to act upon that likelihood. *Lacy* 897 F.3d at 857. In a brief paragraph that cites no authority but *Lacy* (for the foregoing standard), defendants argue that the steps they took to provide access to the courtrooms and toilet facilities at both locations—escorting him through an alternative exit and providing him with a catheter at Branch 38 and placing him in an "ADA accessible bullpen" and assisting him through the too-narrow gate—demonstrate that they reasonably accommodated him and thus were not deliberately indifferent to his federally-protected right of access to public facilities. But this argument ignores all of the evidence from which I concluded above that a jury could find that plaintiff's rights were violated, for example: that the "alternative" exit was not ADA-compliant; that provision of a catheter was not sufficient to allow plaintiff to use the toilet in the area where he was held; and that his access to the Leighton courtroom required a process that caused him pain and discomfort. Moreover, defendants offer no substantive response to evidence plaintiff offers to show that defendants were aware at least as of 2014 that toilet facilities for detainees at the Leighton Courthouse were not ADA compliant, and at least as of 2018-2019 that the Branch 38 courthouse facilities were non-compliant in "numerous" known and unknown ways. *See* Pl.'s L.R. 56.1 Stmt., ECF 148 at ¶¶ 5, 34-36. On this record, I do not

8

conclude that no reasonable jury could find defendants deliberately indifferent.

For the foregoing reasons, defendants' motions are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 2, 2022